IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal No.: 1:14-cr-00146-CCB |
| TYRONE BAILEY | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MOTION TO ADOPT CO-DEFENDANT'S MOTIONS

The Defendant, Tyrone Robert Bailey, by and through counsel, Ivan J. Bates, Esquire, hereby respectfully moves to adopt the pretrial motions filed by the co-defendant(s), to the extent that those motions raise issues that are relevant to, and could have been brought by the Defendant himself.

Respectfully submitted,

_____
Ivan J. Bates, Esquire
Bates & Garcia, LLC
201 N. Charles Street, Suite 1900
Baltimore, Maryland 21202
(410) 814-4600

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September, 2014, a copy of the foregoing Motion to Adopt Co-Defendant's Motions was mailed first-class, postage prepaid, United States Mail to AUSA Chris Romano, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201.

_____
Ivan J. Bates

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal No.: 1:14-cr-00146-CCB |
| TYRONE BAILEY | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The Defendant, Tyrone Bailey, by and through counsel, Ivan J. Bates, Esquire, hereby respectfully requests that this Honorable Court grant the Defendant leave to file additional pre-trial Motions and/or Memoranda should such filing become necessary after all required Discovery and Disclosures are completed in this case and counsel has reviewed, has discussed with Defendant, and researched same.

Respectfully submitted,

_____
Ivan J. Bates, Esquire
Bates & Garcia, LLC
201 N. Charles Street, Suite 1900
Baltimore, Maryland 21202
(410) 814-4600

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September, 2014, a copy of the foregoing Motion to for Leave to File Additional Motions was mailed first-class, postage pre-paid, United States Mail to AUSA Chris Romano, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201.

_____
Ivan J. Bates

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | Criminal No.: 1:14-cr-00146-CCB |
| **TYRONE ROBERT BAILEY,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS TANGIBLE EVIDENCE, DERIVATIVE EVIDENCE AND STATEMENTS

NOW COMES Defendant, Tyrone Bailey, by and through counsel, Ivan Bates, Esquire, and Bates & Garcia, LLC, and hereby respectfully files this Memorandum in Support of his previously filed Motion to Suppress Tangible Evidence, Derivative Evidence and Statements pursuant to Federal Rule of Criminal Procedure 12(b)(3) to suppress any and all tangible and derivative evidence, including any statements of the defendant, seized prior to, during, and following his arrest, and in support thereof states as follows:

### *Facts*

The following facts are relevant to Defendant Bailey's Motion to Suppress and are taken from Maryland State Police Reports authored by Trooper First Class McNeely, turned over by the Government in discovery.

> On Tuesday, March 11, 2014, I, Tfc. McNeely, of the Maryland State Police Proactive Criminal Enforcement team was assigned to work Interstate 95 in Cecil County Maryland.
> (TFC McNeely Narrative 3/11/14).
>
> At approximately 2037 hours, I was stationary in the 101 mile marker crossover on I-95, monitoring the flow of traffic southbound. My attention was drawn to a vehicle in lane one. The vehicle was passing vehicles in lane two and appeared to be traveling above the posted speed

limit of 65 miles per hour. I measured the vehicles speed with a hand held laser at 74 miles per hour. I have been a certified radar/ laser operator with the Maryland State Police since 2007. The laser that I utilized was tested prior to and after its use. The set passed its function test and was in working order.

As the vehicle approached my location, I observed that it was a red Ford F-150 pickup truck. As the vehicle passed in lane one, it was traveling approximately one vehicle length behind a black SUV. The black SUV then changed into lane two. I exited the crossover to pursue the Ford pickup truck for the traffic violations. As I approached the Ford, which was still occupying lane one, it was traveling at approximately 72 miles an hour, which was determined by my patrol speed. The Ford then changed into lane two and slowed its speed. I was in lane two at the time. This action appeared unwarranted since there were no other vehicles in front on the red truck at this time to cause the truck to change lanes.

At approximately 2040 hours, I activated my emergency equipment with the intent to stop the operator for the traffic violations of Maryland Transportation Articles 21-801.1 speeding, and 21-310(a) following closer than reasonable and prudent. The vehicle was bearing Maryland registration plate of 8AG5121. I exited my patrol car and approached the Ford on the passenger side. The pickup truck still had its right turn signal activated while stopped on the shoulder.

The approach on the passenger side is an approach that affords me the ability to observe more of the suspect(s) and the interior of the vehicle. This provides a tactical advantage for my safety.

As I approached the passenger side window, I visually scanned the truck bed and interior. I observed the truck bed to be completely empty. In the rear passenger area of the truck, I observed a small grey backpack, which was laying flat on the floor and appeared to be empty. I observed a black CD case on the rear floor. As I made contact with the driver, I observed little or no personal items other than the CD case on the rear floor. I did not observe any luggage in the vehicle. The vehicle appeared clean and lacked the normal personal items that most everyday vehicles contain.

I introduced myself to the driver and explained the reason for the traffic stop. While speaking with the operator, I detected an overwhelming odor of a masking agent emanating from within the vehicle, which I believed to have been freshly sprayed. I also observed large air fresheners attached to the gearshift. I identified the driver as Lamont George Thomas by his Maryland driver's license. I also observed the front seat passenger to be staring straight ahead as if fixated on something on the windshield the entire time I was at the window. Thomas handed me a registration card

with a female's name on it and I requested he exit the vehicle to confirm the information.

While standing behind the Ford truck, I inquired as to whom the owner of the vehicle was and Thomas advised it was his cousin. I asked Thomas what his cousin's name was and he advised Sharonda Thomas. I asked Thomas who was in the vehicle with him and he advised it was his cousin's boyfriend. The front seat passenger was later identified as Tyrone Robert Bailey by his Maryland driver's license. I asked Thomas if he realized he was speeding and following too close and he stated that the vehicle cut him off. Thomas advised he had a clean driving record and was not in a hurry. Sgt. Conner arrived at approximately 20:41:41 hours to check on my well being and began speaking with the passenger. I then returned to my patrol vehicle at approximately 20:42:30 hours.

While seated in my patrol vehicle, I began completing a traffic warning for the two violations. At approximately 20:44 hours, Tfc Hirsch arrived at my passenger window. I began explaining to Tc Hirsch what I had observed. At approximately 20:45 hours, I contacted the JFK Highway Barrack via my in car radio to relay the information for the traffic stop, and conducted a license and wanted check on the driver. While speaking with Bailey, Sgt. Conner learned that the driver was his cousin and the owner of the truck his "Girl." Bailey further advised they were traveling from the Atlantic City, New Jersey area. When asked if they were at a casino and how they had done, Bailey responded, "Not good." Sgt. Conner then asked Bailey if they had lost a lot of money and Bailey stated, "No, we didn't take any money to lose." When asked if there was any marijuana or heroin in the vehicle, Bailey stated, "No." When asked if there was any cocaine in the vehicle, Bailey stated, "There is nothing in the vehicle."

I suspected that the driver and passenger were engaged in criminal activity. My suspicions were based on the combination of the following:
- Third party vehicle, the owner was not present
- Overwhelming odor of a masking agent.
- No luggage consistent with international travel.
- The cab of vehicle lacked personal items and was consistent with prior load vehicles I have encountered.
- Right turn signal activated throughout entire traffic stop.

The observations were inconsistent with normal Interstate travel and more indicative of drug trafficking. I believed that the occupants were in the progress of committing a drug crime.

At approximately 20:46:13 hours, Tfc Hirsch began the narcotics canine scan with his partner canine Kilo. Tfc. Hirsch is a certified and very

experienced canine handler for the Maryland State Police. Canine Kilo alerted to the vehicle for the odor of narcotics.

It should be noted, that at the time of the canine alert it was approximately 6 minutes into the traffic stop. I had not yet finished the warning for the traffic violations.

Prior to beginning the search of the vehicle, both Thomas and Bailey were detained in handcuffs for our safety, due to the positive K-9 alert.

As I entered the pickup truck, I observed a small bottle of spray air freshener on the front passenger seat. While inside of the cab, I could detect a strong odor of burnt marijuana. Sgt. Conner advised me that the driver and passenger were extremely nervous. During the search of the vehicle, Sgt. Conner located an electronically controlled false compartment built into the seat back of the rear bench seat. The compartment door was held in place by a trunk lock. The rear bench seat was extremely heavy due to the sheet metal and other components of the compartment. While partially prying the door open, four white rectangular shaped packages wrapped in clear plastic wrap were observed inside the compartment. At approximately 22:14 hours, the four packages were removed from the compartment.

The 4 rectangular packages were found to contain a white powdery substance. I identified the substance to be cocaine through my training, knowledge, and experience gained at the MSP Academy and from numerous prior CDS arrests. Thomas and Bailey were transported to the JFK Highway Barrack.

The white powdery substance field tested positive for the presence of cocaine. The weight of the cocaine was verified by Sgt. Conner and found to be 4,253 grams. The sheer weight of the cocaine, method of concealment and of its packaging indicates the intent to distribute. The estimated street value of the cocaine is approximately $425,300.00.

A secondary search of Bailey at the JFK Barrack revealed $1,600.00 of United States Currency. Multiple cell phones and pine tree air fresheners were recovered from Bailey. While searching Bailey, he repeated several times, "Just let me say goodbye to my kids, just let me say goodbye to my kids and then Fuck it, put me in my box." This statement was not solicited from Bailey in any way, and no questions were asked of him leading up to this statement.

(TFC McNeely Narrative 3/11/14).

4

*Argument*

The Fourth Amendment to the United States Constitution states:

> *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

U.S. Const. Amend. IV.

"The Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant." *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (*quoting Illinois v. Gates*, 462 U.S. 213 (1983)). So much preference is afforded to judicially authorized warrants that warrantless searches are presumptively unreasonable – subject to very limited and specific exceptions. *Horton v. California*, 496 U.S. 128, 133 (1990) (*citing Katz v. United States*, 389 U.S. 347 (1967)). The Government has the burden to establish that a warrantless search and seizure is not unreasonable." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984)).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Digiovanni*, 650 F.3d 498, 506 (2011) (*quoting Whren v. United States*, 517 U.S. 806, 810 (1996)). "A traffic stop typically beings when a car is pulled over for investigation of a traffic violation." *Id.*

When a police officer conducts a traffic stop, both the driver and passenger(s) are "seized within the meaning of the Fourth Amendment." *Brendlin v. California*, 551 U.S. 249, 251 (2007). This is because "[a] traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver, diverting both from the stream of traffic to the side of the road, and the police activity that normally amounts to intrusion

5

on privacy and personal security does not normally distinguish between passenger and driver." *Id.* at 257. The Supreme Court recognized that "a passenger may bring a Fourth Amendment challenge to the legality of a traffic stop." *Id.* at 259. As the Supreme Court recognized, "[i]f either the stopping of the car, the length of the passenger's detention thereafter, or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." *Id.* at 259 (*quoting* 6 W. LaFave, Search and Seizure § 11.3(e), pp.294, 195, and n.277 (4th ed.2004 and Supp.2007)).

"An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion." *Ornelas v. United States*, 517 U.S. at 693 (*citing Terry v. Ohio*, 392 U.S. 1 (1968)). This is because "a traffic stop is more analogous to an investigative detention than a custodial arrest." *Digiovanni*, 650 F.3d at 506. The Fourth Circuit has explained,

> Pursuant to *Terry*, we analyze the propriety of a traffic stop on two fronts. First, we analyze whether the police officer's action was justified at its inception. Second, we analyze whether the police officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop.

*Digiovanni*, 650 F.3d at 506 (internal citations omitted).

"If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion or receive the driver's consent." *Digiovanni*, 650 F.3d at 507. The Fourth Circuit has explained that,

> there are two types of prolongation cases, one where the traffic stop has concluded, in which any subsequent detention is impermissible without

the presence of reasonable suspicion, and those in which there is some prolongation before the stop is completed because the police officer is pursuing parallel investigative purposes, one related to the justification for the traffic stop, the other unrelated.

*Id.* at 508.

"Reasonable suspicion and probable cause are "commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 695-96 (internal citations omitted) (internal quotations omitted). Reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity and probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id.* at 696 (internal citations omitted) (internal quotations omitted). Probable cause and reasonable suspicion are most typically analyzed under a totality of the circumstances approach to determine if there exists a "particularized and objective basis for suspecting wrongdoing." *See Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted). "[A] warrantless search of a car is valid if based on probable cause." *Id.* (*citing California v. Acevedo*, 500 U.S. 565, 569-70 (1991)).

The analysis a court undertakes when determining whether reasonable suspicion or probable cause exist in warrantless searches and seizures is a two-part process. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas*, 517 U.S.

at 696. When deciding whether there is probable cause, "a police officer may draw inferences based on his own experience in deciding whether probable cause exists." *Id.* at 700.

However, the Government cannot use whatever facts are present, no matter how innocent, as indicia of 'suspicious activity' to support "inchoate and unparticularized suspicion." *United States v. Foster*, 634 F.3d 243, 248 (2011). "[A]n officer ... must do more than simply label a behavior as 'suspicious' to make it so." *Id.* This is because "post hoc rationalizations" will not "validate seizures that happen to turn up contraband." *Id.* at 249. The Fourth Circuit has previously held that rationalization such as two shirts hanging in the back of the vehicle, a clean car, a hygiene bag located in the back seat were "absurd" "post hoc rationalizations" and did not support reasonable suspicion for the prolonged detention of a vehicle.[1] *Digiovanni*, 650 F.3d at 512.

"[A] person is seized for Fourth Amendment purposes when, under the circumstances, a reasonable person would feel that he was not free to leave." *United States v. Alpert*, 816 F.2d 958, 960 (4th Cir. 1987). "In analyzing a *Terry*-stop, the intrusiveness of the stop is the critical threshold issue." *Id.* at 961 (*quoting United States v. Place*, 462 U.S. 696, 722 (1983)). "The duration or brevity of the stop is a key consideration in determining its intrusiveness." *Id.* (*citing Place*, 462 U.S. at 709)). "Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop." *Id.* at 961-62 (*quoting United States v. Sharpe*, 470 U.S. 675, 685 (1985)). "Whether or not a search or seizure is so intrusive as to violate the Fourth Amendment depends on all the circumstances of the case and not usually on

---

[1] The Trooper in *DiGiovanni* was Trooper Conner of the Maryland State Police and appears to be the same Trooper that participated in the traffic stop of Defendant Bailey in this case.

any hard and fast rule." *Id.* at 964. The Fourth Circuit has outlined a list of circumstances that must be taken into account when determining whether a stop was unreasonably intrusive including the duration of time the suspect is detained, whether the police acted with diligence, whether the detention of the suspect was unnecessarily prolonged, and the importance of the governmental interest at stake that justifies the intrusion. *Id.*

The original stop of the vehicle in Defendant Bailey's case lacked any reasonable suspicion or probable cause. Morevoer, the continued detention to conduct a canine scan was not supported by any objective reasonable suspicion on the part of the officers. The warrantless search and seizures were not supported by probable cause and exceeded any authority under a legitimate *Terry* stop. For those reasons, any evidence, derivative evidence, or statements must be suppressed.

WHEREFORE, the Defendant moves that

(a) any and all evidence seized from Defendants' person, vehicle(s), residence(s) be suppressed;

(b) any and all statements of Defendant be suppressed;

(c) all evidence gathered as a direct or indirect result of any wiretaps be suppressed;

(d) the trial be severed from the Co-Defendants;

(e) Defendant be permitted to supplement this Motion and Memorandum as needed; and

(f) this Honorable Court grant any further relief as appropriate.

Respectfully submitted,

_____
Ivan J. Bates, Esquire
Bates & Garcia, LLC
201 N. Charles Street, Suite 1900
Baltimore, Maryland 21201
(410) 814-4600

Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of September, 2014, a copy of the foregoing Memorandum in Support of Motion to Suppress Tangible Evidence, Derivative Evidence and Statements was e-filed with the CM/ECF system and thus served on all parties to the case. Undersigned counsel is not aware of any party that is pro se or not registered on the CM/ECF system.

_____
Ivan J. Bates